# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT CHATTANOOGA

| | |
|---|---|
| CINCINNATI INSURANCE CO., ) | |
| ) | |
| *Plaintiff* ) | |
| *and Counter-Defendant,* ) | |
| ) | NOS. 1:16-cv-00172 |
| v. ) | 1:16-cv-00349 |
| ) | REEVES/LEE |
| REGIONS BANK, ) | |
| ) | |
| *Intervenor Plaintiff,* ) | |
| *Counter-Claimant,* ) | |
| *And Cross-Claimant,* ) | |
| ) | |
| v. ) | |
| ) | |
| MARY McLEAN and TIMOTHY McLEAN, ) | |
| ) | |
| *Defendants, Cross-Defendants,* ) | |
| *and Counter-Claimants,* ) | |
| ) | |
| v. ) | |
| ) | |
| IN RE $125,000, ) | |
| ) | |
| *Intervenor.* ) | |
| ) | |

## MEMORANDUM OPINION & ORDER

What began as an action for declaratory relief filed by Cincinnati Insurance Co. ("Cincinnati Insurance") against Mary McLean and Timothy McLean (collectively, the "McLeans") is now an interpleader action between the McLeans' former attorney, William T. Alt, P.C. ("Alt"), and Regions Bank. In the original dispute, Cincinnati Insurance deposited $125,000 with the Court in accordance with a settlement between Cincinnati Insurance, the McLeans, and Regions Bank. Alt contends that he has a priority charging lien on the settlement funds arising from representation in the separate state-court action that prompted this case. Regions Bank contends that they have a

1

priority lien on the settlement to the funds as garnishee to money owed to the McLeans and held by Cincinnati Insurance.

Three motions are before the court: Alt's motion for summary judgment [D. 83], Regions Bank's cross-motion for summary judgment [D. 86], and Alt's motion to strike an affidavit filed by Regions Bank in support its cross motion for summary judgment [D. 94]. The Court will first address the cross-motions for summary judgment, followed by the motion to strike.

## I. Motions for Summary Judgment

### A. Background

#### 1. History of the Case

This decade-long litigation saga began in 2009 when Jason and Honey Taylor sued the McLeans and their contractor, Vision Homes, LLC ("Vision Homes") in the Hamilton County Chancery Court, due to a dispute regarding construction of a new home in Signal Mountain, Tennessee on neighboring property. The McLeans cross-claimed against Vision Homes for a variety of construction defects and contractual violations. Cincinnati Insurance aided Vision Homes in its defense of the cross-claim brought by the McLeans because the suit alleged property damage, which triggered Cincinnati Insurance's obligation to defend under an insurance policy.

However, the home was never completed and the McLeans defaulted on their construction loan from Regions Bank. In 2013, Regions Bank foreclosed on the property and sought to recover a deficiency from the McLeans. This case was consolidated with the prior case against the McLeans, and Regions Bank received a deficiency judgment in July 2015 in the amount of $419,420.99. Regions Bank recorded the judgment in the Hamilton County Register's Office on September 22, 2015.

In 2016, the McLeans prevailed in their claim against Vision Homes in the amount of $536,000. But, because of the previous foreclosure on the home by the time of trial, the McLeans

instead sought restitution damages under the contract between Vision Homes and the McLeans, not property damages. The Hamilton County Chancery Court awarded restitution damages. However, Vision Homes had been dissolved in 2013, leaving Cincinnati Insurance, insurer of Vision Homes, in a predicament. Cincinnati Insurance had participated in Vision Homes' defense because the suit alleged property damage, but the restitution damages awarded were debatably not covered by the insurance policy's indemnification provisions.

Consequently, in June 2016, Cincinnati Insurance brought this action in this Court seeking a declaratory judgment as to whether, under its contract with Vision Homes, it was obligated to indemnify Vision Homes for the damages awarded to the McLeans in the state court action.

In July 2016, Regions Bank brought a garnishment action in the Hamilton County Chancery Court seeking to garnish any money owed to the McLeans by Cincinnati Insurance, later moving for entry of conditional judgment and for a writ of *scire facias*. However, Cincinnati Insurance removed the garnishment action to this Court in August 2016, and, in September 2016, Regions Bank moved to intervene in this case, which this Court allowed.

In October 2016, the parties were ordered to mediation, which resulted in a tentative settlement between Cincinnati Insurance, the McLeans, and Regions Bank. Notably, the settlement required that "[Cincinnati Insurance] would pay $125,000, which would go to [Regions Bank]."

### 2. Development of Mr. Alt's Claim

Alt represented the McLeans in the Vision Homes litigation pursuant to a retainer agreement executed on August 3, 2015 and substituted for the McLeans' original counsel. However, the protracted litigation sapped the McLean's ability to pay Alt's rate and Alt and the McLeans amended the retainer to provide Alt with a contingency fee of "25% of any judgment that is recovered by the McLeans against Vision Homes, LLC, but in no event less than Fifty Thousand Dollars

($50,000)." He recorded an "Abstract of Lien Lis Pendens" in the Hamilton County Register's Office on December 4, 2015, along with a "Notice of Attorney's Statutory Lien."

Alt continued to represent the McLeans in this case as well, including at the aforementioned mediation. Alt purportedly accepted the settlement on the McLeans behalf, then withdrew his representation due to a conflict of interest. He then filed his first motion to intervene in this case, seeking a lien on the settlement funds to recover attorney's fees.

### 3. Clash of Claims

The ensuing confusion arising from Alt's claim ultimately scuttled the settlement. After cross-motions to enforce the settlement, the Court found in July 2017 that the ambiguity in the terms meant that there was no valid settlement to enforce.

Following extensive motion practice and a case management conference, it was agreed that Cincinnati Insurance would deposit $125,000 with the Court pursuant to the settlement agreement and would be dismissed from the case, which was finalized on November 27, 2017. In January 2018, following more motion practice and another status conference, the McLeans entered bankruptcy and this case was stayed. After the stay was lifted and more case-management conferences, the McLeans moved to be dismissed from the case, renouncing any claim to the settlement funds deposited with the Court. On May 23, 2019, the McLeans were dismissed from the case by agreement of the parties.

On May 30, 2019, the Court granted Alt's motion to intervene in the Court's disposition of the $125,000 deposited with the Court. Alt and Regions Bank, the sole remaining parties, have both moved for summary judgment. Regions Bank asserts a right to the full amount as a result of the settlement agreement and its garnishment action and Alt asserts a claim to $50,000, plus $3,215.25 in costs, arising from his charging lien against the Vision Homes judgment.

### B. Jurisdiction

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Nevertheless, "when a federal court has properly acquired jurisdiction over a cause, it may entertain, by intervention, dependent or ancillary controversies." *Fulton Nat. Bank of Atlanta v. Hozier*, 267 U.S. 276, 280 (1925). A court may exercise ancillary jurisdiction for two purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent . . . and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (citations omitted). The former has been codified by statute, 28 U.S.C. § 1367, while the latter, known as "ancillary enforcement jurisdiction," continues as a creature of case law and necessity. *See Hudson v. Coleman*, 347 F.3d 138, 142 (6th Cir. 2003); *Peacock v. Thomas*, 516 U.S. 349, 359 (1996) (citing *Kokkonen*, 511 U.S. at 380).

Here, this dispute presents competing claims to settlement funds deposited with the court by agreement of the parties as a result of a partially-failed settlement agreement. In some sense, both purposes for ancillary jurisdiction are present. First, these claims are factually interdependent with the suit as it originated, which sought to clarify the relationship of the parties. Second, the court must dispose of the funds before it to "manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at 380. Further, the Supreme Court has held that "where, in the progress of a suit in a federal court, property has been drawn into the court's custody and control, third persons claiming interest in or liens upon the property may be permitted to come into that court for the purpose of setting up, protecting, and enforcing their claims." *Hoffman v. McClelland*, 264 U.S. 552, 558 (1924).

5

### C. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.,* 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

The standards upon which the court evaluates motions for summary judgment do not change when, as here, both parties seek to resolve the case through the vehicle of cross-motions for summary judgment. "The fact that both parties have moved for summary judgment does not

mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1999) (citations omitted).

### D. Analysis

Each party asserts that the other party's claim is rooted in a lien that is either invalid or subordinate to their own. The Court will first address Alt's claim, followed by Regions Bank's claim.

#### 1. Alt's Claim to the Settlement Funds

An attorney-client relationship is, in essence, contractual. *See Alexander v. Inman*, 974 S.W.2d 689, 694 (Tenn. 1998); *Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn. Ct. App. 1999). Because an attorney is obligated to exercise the utmost good faith in the discharge of his or her duties to represent the client, *Crawford v. Logan*, 656 S.W.2d 360, 364 (Tenn. 1983), an attorney's appropriate representation of the client entitles the attorney to the reasonable, agreed-upon compensation without regard to the actual benefit the services might have been to the client. *Spofford v. Rose,* 237 S.W. 68, 76 (Tenn. 1922). Attorney's liens secure a lawyer's claim for fees should a client fail to compensate the lawyer for services rendered. *Starks*, 20 S.W.3d at 650. One type of attorney's lien, a charging lien, is rooted in a lawyer's equitable right to have the fees and costs due for the lawyer's services in a particular action secured by the judgment or recovery in that action. *Id.*; *Southern v. Beeler*, 195 S.W.2d 857, 870 (Tenn. 1946). A charging lien attaches to any proceeds flowing from a judgment, as long as the lawyer worked to secure that judgment for the client. *Butler v. GMAC,* 313 S.W.2d 260, 262 (Tenn. 1958). Consequently, attorneys "employed

7

to prosecute a suit that has already been brought in any court of record shall have a lien upon the plaintiff's right of action from the date of the attorney's . . . employment in the case." Tenn. Code Ann. § 23-2-103. However, "an attorney's lien against either his client's cause of action or judgment is not the functional equivalent of an indebtedness owing to the attorney by the client's obligor." *In re Hill*, 26 B.R. 52, 54 (Bankr. E.D. Tenn. 1982).

Here, Alt executed an amended retainer agreement with the McLeans "to secure the Firm's services as it would relate to the pending lawsuit in the Chancery Court of Hamilton County, Tennessee, Docket No. 09-0555, in which the McLeans [we]re pursuing a cross claim against Vision Homes, LLC." Alt contracted to "provide its services limited to the trial of the . . . case against Vision Homes, LLC . . . on a contingency fee basis of 25% of any judgment that is recovered by the McLeans against Vision Homes, LLC, but in no event less than Fifty Thousand Dollars ($50,000)." Accordingly, Alt filed an abstract of lien *lis pendens* and notice of attorney's statutory lien in the Vision Homes litigation in the Chancery Court of Hamilton County. Alt asserts that, "[w]hile the Alt law firm's statutory charging lien claim arises from the services that resulted in the McLean judgment against Vision Homes, the settlement money in this court is seen as recovery of proceeds flowing from the McLean judgment."

Presuming the validity of Alt's charging lien, "[o]nce the court declares the existence of the attorney's lien *in the underlying litigation*, the lien becomes an equitable charge on any recovery the client receives *in the litigation*." *Starks*, 20 S.W.3d at 652 (emphasis added). Accordingly, "[u]nless the fund upon which the lien is sought to be enforced comes within the control of the Court *in the case in which the services are rendered*, . . . the attorney will then be compelled to resort to an original suit to enforce his lien." *State v. Edgefield & K.R. Co.*, 63 Tenn. 92, 97 (1874) (emphasis added). "[A] charging lien does not, *ipso facto*, entitle an attorney to his or her fees; it

merely secures the attorney's judgment for his or her fees." *Chambers v. Devore*, No. W201302827COAR3CV, 2015 WL 4381631, at *8 (Tenn. Ct. App. July 17, 2015). Instead, a charging lien "merely protects the lawyer up to that amount on any judgment he or she obtains." *Id.*

While the present case is undeniably related to the Vision Homes litigation and judgment to which Alt's charging lien attached, it is not the same "case in which the services [we]re rendered." *Id.* Alt does not seek payment from the deposited funds for his services in *this* action but for his services in the Vision Homes litigation. Instead, this case asks whether the Vision Homes judgment triggered an indemnity obligation under the policy between Vision Homes and Cincinnati Insurance. In other words, this case sought to resolve whether Cincinnati Insurance became an obligor to the McLeans. Consequently, the deposit before the Court is the fruit of the parties' negotiations regarding indemnity, not the proceeds of the judgment in the Vision Homes litigation. Even if the Court were to make a finding on Cincinnati Insurance's obligation to pay the Vision Homes judgment, which it has not, the Court would only be finding that Cincinnati Insurance was an obligor to the McLeans or Regions Bank. Alt's lien against the Vision Homes judgment "is not the functional equivalent of an indebtedness owing to the attorney by the client's obligor," *In re Hill*, 26 B.R. at 54, which would be Cincinnati Insurance or its deposit with the Court by proxy.

Further, even if the settlement money deposited with this Court was "proceeds flowing from the McLean judgment" against which Alt has a charging lien, Alt would still not be entitled to payment from the funds. A charging lien "does not function as an adjudication of the rights between the lawyer and his or her client." *Starks*, 20 S.W.3d at 652 (citing *Pierce v. Lawrence*, 1 S.W. 204, 205–06 (Tenn. 1886)). As this is not "the case in which the services were rendered" giving rise to the charging lien, this Court would then need to adjudicate the rights between Alt

9

and the McLeans in regards to the piecemeal settlement arising from this action. The McLeans are no longer party to this action and have relinquished any claim to the funds before the Court. It is true that a charging lien can attach "to a compromise settlement of the suit and cannot be defeated or satisfied by a voluntary settlement by the client without his attorney's consent." W. Life Ins. Co. v. Nanney, 296 F. Supp. 432, 440 (E.D. Tenn. 1969) (citing *Tompkins v. Nashville, C. & St. L. Railroad*, 72 S.W. 116, (Tenn. 1902)). But Alt himself conveyed the McLeans' acceptance of the partially-defunct settlement. Likewise, Alt raised no opposition to the McLeans' dismissal from the action. The Court will not, in retrospect, seek to adjudicate the rights of parties no longer present before the Court.

Further still, equitable grounds prevent Alt from claiming payment from the funds deposited with the Court. "[C]harging lien rights may be waived or forfeited in a variety of ways." *Starks*, 20 S.W.3d at 651. While forfeiture of charging lien rights generally occurs when "a lawyer fails to represent his or her client's interests faithfully, honestly, and consistently or fails to discharge his or her duties with the utmost faith, *id.* (citations omitted), waiver, under Tennessee law, has been defined as "a voluntary relinquishment or reunification of some right." *Baird v. Fidelity-Phenix Fire Ins. Co*., 162 S.W.2d 384, 389 (Tenn. 1942). Waiver may be established "by a course of acts and conduct, or by so neglecting and failing to act, as to induce a belief that it was an intention and purpose to waive." *Id.*

Here, there is no evidence that, prior to withdrawal, Alt failed to represent his client's interests faithfully, honestly, or consistently or act with the utmost faith in that representation, thus warranting forfeiture. The McLeans commend his efforts in the Vision Homes litigation. However, Alt was lax in providing for payment for his representation. Alt was well aware of Vison Homes' insolvency when negotiating settlement in this case on behalf of the McLeans. Rather than seeking

to ensure payment for his representation from his client or as part of the settlement negotiations in this case, Alt elected to cease his representation and upset what had been a settled agreement by seeking payment from settlement funds. By "so neglecting and failing to act" prior to withdrawing as the McLeans' attorney and intervening in this case, Alt induced a belief among the parties that a settlement had been reached as to all claims and thereby waived any satisfaction of his claim for payment from the Vision Homes litigation through the settlement funds before the Court.

In short, when the McLeans were unable to pay an hourly rate in the Vision Homes litigation, Alt took a gamble and agreed to continue on contingency.[1] The gamble appeared to be a good bet, but Vision Homes went under and did not pay the judgment. Instead of seeking renumeration directly from the McLeans, Alt took another gamble: He separated from his clients and attempted to ambush the settlement he negotiated on their behalf. Such a maneuver does not warrant reward in law or equity.[2]

### 2. Regions Bank's Claim to the Settlement Funds

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (quoting *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir. 1976)). This power "has its basis in the policy favoring the settlement of disputes and the avoidance of costly and time-consuming litigation." *Kukla v. Nat'l Distillers Prod. Co.*, 483 F.2d 619, 621 (6th Cir.

---

[1] As the lyrics go, "I'd rather be sorry for something I've done, than for something that I didn't do . . . . But I'd gamble whatever tomorrow might bring, for the [case] that I'm living today." KRIS KRISTOFFERSON & RITA COOLIDGE, *I'd Rather Be Sorry, on* BREAKAWAY (Monument Records 1974).

[2] It is worth noting that "[t]he lawyer's duty of loyalty survives the termination of the former representation to the extent that it precludes the lawyer from acting to deprive the former client of the benefit of the lawyer's prior work on the former client's behalf." TENN. R. PROF'L CONDUCT 1.9 cmt 3a (2011).

1973) (citations omitted). A federal court possesses this power "even if that agreement has not been reduced to writing." *Bowater N. Am. Corp. v. Murray Mach.*, 773 F.2d 71, 77 (6th Cir. 1985)

However, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000) (quoting *Brock*, 841 F.2d at 154). "While summary enforcement of a settlement agreement may very well promote the above policy in cases where there exists no substantial dispute as to the entry into, or the terms of, the agreement, summary proceedings may result in inequities when . . . such a dispute does exist." *Kukla v. Nat'l Distillers Prod. Co.*, 483 F.2d 619, 621 (6th Cir. 1973).

Tennessee law decides the agreement's validity. *See Cassidy v. Azko Nobel Salt, Inc.*, 308 F.3d 613, 615 (6th Cir. 2002). "If the essential terms of an alleged agreement are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553–54 (Tenn. Ct. App. 1991).

Here, the parties formed an agreement in mediation that "[Cincinnati Insurance] would pay $125,000, which would go to [Regions Bank]." As the Court determined earlier regarding the written settlement, all parties except Alt had agreed on three things: (1) Regions would end up with $250,000; (2) the McLeans would pay half that; and (3) this suit and the consolidated Regions suit will be dismissed. The parties disagreed on the timing of Cincinnati Insurance's dismissal, leading the Court to find ambiguity in the original settlement. However, in the nearly two years since, these disputed material terms of the agreement have been resolved. The parties all agreed that Cincinnati Insurance would be dismissed from the case upon deposit with the Court. The

parties all agreed that the McLeans would be properly dismissed from the case when they renounced any claim to the deposited funds, which mooted any debate as to whether the settlement funds "which would go to" Regions Bank would first go to the McLeans or go directly from Cincinnati Insurance to Regions Bank. The only "dispute" that remained at the time of these cross-motions for summary judgment was whether Alt had a valid, priority claim to the settlement funds over and above Regions Bank. That claim, as discussed *supra*, does not raise a legitimate dispute regarding the settlement. While the text of the settlement did not manifest a meeting of the minds on certain material elements in July 2017, the agreements of the parties, in concert with the subsequent actions resolving the disagreements, have formed a valid settlement, even if not reduced to writing in the interim.

### 3. Lien Matters

It is worth noting that the validity and priority of each asserted lien on the deposited funds depends upon the Court's determination whether Cincinnati Insurance was obligated to indemnify Vision Homes for the judgment against it.

Alt contends that the settlement funds before the court are "proceeds flowing from" the Vision Homes judgment upon which the lien is asserted. However, for these funds to "flow from" that judgment, this Court would have to determine that Cincinnati Insurance was an indemnitor of Vision Homes.

Regions Bank contends that the settlement funds before the court are subject to its garnishment action against Cincinnati Insurance. However, for the garnishment to have attached to property held by Cincinnati Insurance, "[s]uch indebtedness must be actual and vested." *Lipman Bros., Inc. v. Arete Agencies, Inc.*, No. M200402073COAR3CV, 2005 WL 3333270, at *3 (Tenn. Ct.

13

App. Dec. 7, 2005) (citing *Overman v. Overman*, 570 S.W.2d 857, 858 (Tenn.1978)). For indebtedness to have been actual and vested at the time of garnishment, Cincinnati Insurance must have been Vision Homes' indemnitor and the McLeans' obligor.

However, the parties eventually reached agreements that resulted in dismissal of Cincinnati Insurance and the McLeans without any determination of obligation. Likewise, this Court made no finding that Cincinnati Insurance was obligated to indemnify Vision Homes for the judgment. As such, the Court will refrain from making such a determination in those parties' absence and need not make a finding to resolve the question at hand, as discussed *supra*.

### E. Conclusion

Consequently, because Alt's claim fails and the parties to the settlement agreed that the $125,000 was to go to Regions Bank in some form or fashion, Regions Bank's motion for summary judgment should be granted and Alt's motion for summary judgment should be denied.

## II. Motion to Strike

Alt moved to strike the affidavit of Akinawande Childrey, which was submitted by Regions Bank in support of its motion for summary judgment. "Affidavits are not pleadings subject to motions to strike under Rule 12(f)." *Reed v. City of Memphis, Tennessee*, 735 F. App'x 192, 197 (6th Cir. 2018). Courts may strike redundant, immaterial, impertinent, or scandalous matter from a pleading, FED. R. CIV. P. 12(f), but an affidavit is not a "pleading" as defined in Rule 7(a). *See Reed*, 735 F. App'x at 197; FED. R. CIV. P. 7. Rule 12(f) "does not make provision for testing the legal sufficiency of affidavits by a motion to strike." *Id.* (citing *Wimberly v. Clark Controller Co.*, 364 F.2d 225, 227 (6th Cir. 1966)). Consequently, a motion to strike an affidavit is construed as a challenge to the "admissibility of the evidence offered in the affidavit[] and the competency of the affiant to testify to the matters stated therein." *Wimberly v. Clark Controller Co.*, 364 F.2d at 227.

These questions exist "in every instance where affidavits are filed pursuant to Rule 56." *Reed*, 735 F. App'x at 197. An affidavit that does not comport with Rule 56 should be disregarded. *Id.*; *see also Ondo v. City of Cleveland*, 795 F.3d 597, 604–05 (6th Cir. 2015).

Here, Mr. Childrey, a Vice President for Regions Bank and attendee of the mediation in this case, asserts that the "allegations and averments" of the motions to enforce the settlement agreement filed by Cincinnati Insurance and Regions Bank and the answer, counterclaim, and crossclaim filed by Regions Bank "are true and correct." While this blanket statement has suspect evidentiary value, the relevant factual issues to these cross-motions for summary judgment are already on the record and the Court has not relied upon Mr. Childrey's affidavit. Consequently, Alt's motion to strike the affidavit should be denied as moot.

### III. Conclusion

In light of the foregoing, Alt's motion for summary judgment [D. 83] is **DENIED**. Regions Bank's motion for summary judgment [D. 86] is **GRANTED**. Alt's motion to strike [D. 94] is **DENIED as moot**. This case and related case *Regions Bank v. McLean et al.*, 1:16-cv-00349, are **DISMISSED**.

**IT IS SO ORDERED.**

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

15